# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LYNN EIDSON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-00049-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL, AND REMANDING ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 14, 17, 19) |

**I.**

**INTRODUCTION**

Barry Lynn Eidson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons explained herein, Plaintiff's motion for summary judgment shall be granted, Defendant's cross-motion for summary judgment shall be denied, Plaintiff's social security appeal shall be granted, and this matter shall be remanded for further proceedings.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 9, 10, 11.)

1

## II.

## BACKGROUND

### A. Procedural History

On January 10, 2020, Plaintiff filed a Title II application for a period of disability insurance benefits, alleging a period of disability beginning on October 1, 2018. (AR 171-174.) Plaintiff's application was initially denied on April 20, 2020, and denied upon reconsideration on November 13, 2020. (AR 73, 74-96.) Plaintiff requested and received a hearing before Administrative Law Judge Linda Crovella (the "ALJ"). Plaintiff appeared for a hearing before the ALJ on April 14, 2021. (AR 28-61.) On May 14, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 12-27.) On December 1, 2021, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

On January 11, 2022, Plaintiff filed this action for judicial review. (ECF No. 1.) On October 14, 2022, Defendant filed the administrative record ("AR") in this action. (ECF No. 13.) On November 28, 2022, Plaintiff filed a motion for summary judgment. (Pl.'s Opening Br. ("Br."), ECF No. 14.) Following an extension of the briefing schedule, on February 10, 2023, Defendant filed an opposition brief and motion for cross-summary judgment. (Def.'s Opp'n ("Opp'n"), ECF No. 17.) On February 24, 2023, Plaintiff filed a reply brief. (ECF No. 19.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 20, 2021:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant has not engaged in substantial gainful activity since April 15, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Vasovagal syncope and cerebrovascular disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; and he cannot tolerate exposure to hazards (such as unprotected heights or moving machinery) or extreme heat.

6. The claimant is capable of performing past relevant work as a machine packager (DOT# 920.685-078). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2019, through the date of this decision (20 CFR 404.1520(f)).

(AR 17-22.)

### III.

### LEGAL STANDARD

**A.      The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

1  quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).
2  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is
3  harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not
4  harmless "normally falls upon the party attacking the agency's determination."  Shinseki v.
5  Sanders, 556 U.S. 396, 409 (2009).

6       Finally, "a reviewing court must consider the entire record as a whole and may not affirm
7  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,
8  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
9  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may
10 review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th
11 Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is
12 not this Court's function to second guess the ALJ's conclusions and substitute the Court's
13 judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational
14 interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting
15 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

18       Plaintiff argues this action should be remanded because: (1) the ALJ failed to provide clear
19 and convincing reasons for discounting Plaintiff's allegations of physical dysfunction; (2) the
20 ALJ failed to properly evaluate the examining medical source opinion of the consultative
21 psychologist, L. Faurbo, Psy.D.; (3) the ALJ failed to properly evaluate the non-examining
22 opinion of the State agency psychologist, Darryll Snyder, Ph.D.; (4) the ALJ erred in serving as
23 her own medical expert with regard to Plaintiff's mental limitations; (5) the ALJ failed to
24 properly evaluate the treating medical source opinion of Plaintiff's primary care provider, Boyd
25 Johnson, D.O.; and (6) the ALJ posed an incomplete hypothetical question to the vocational
26 expert, and therefore, the vocational expert's responsive testimony did not constitute substantial
27 evidence supporting the ALJ's step four determination.

28       The Court finds Plaintiff has demonstrated error as to the first challenge that the ALJ

failed to provide clear and convincing reasons for discounting Plaintiff's testimony, warranting remand, and the Court need not reach the remaining five challenges to the ALJ's decision.

### A. The Court Finds the ALJ Failed to Provide Clear and Convincing Reasons to Discount Plaintiff's Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of physical dysfunction. (Br. 11-15.)

#### 1. The Clear and Convincing Standard for Evaluating Symptom Testimony[5]

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

Factors that may be considered in assessing a claimant's subjective pain and symptom

---

[5] Although Defendant maintains disagreement with the standard in order to preserve the issue for future appeals, Defendant acknowledges the clear and convincing standard is the applicable standard for weighing subjective symptom testimony in the Ninth Circuit. (Opp'n 10 n.3.)

testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284).

2. <u>The Court Finds the ALJ did not Provide Clear and Convincing Reasons</u>

Although referencing other records and findings in the earlier portion of the opinion, the ALJ's specific findings that are the subject of the Plaintiff's challenge, are as follows:

> While the record supports the *types* of limitations that the claimant has alleged, it does not support their severity. As explained above, the evidence shows ongoing treatment for a variety of issues that could cause some physical limitations. However, that treatment history also shows that those symptoms and limitations are not overwhelming. The claimant's treatment history was consistently conservative, and his conditions were mostly well-controlled with medication. Further, the claimant's own descriptions of his day-to-day activities were not consistent with the degree of limitations he alleged, and instead show much greater capabilities.

(AR 21-22.)

**a.   Conservative Treatment**

"[G]enerally speaking, evidence of conservative treatment may constitute a legitimate reason to discount a claimant's symptoms." Warecki v. Comm'r of Soc. Sec., No. 120CV01519BAKSAB, 2022 WL 2901606, at *9–10 (E.D. Cal. July 22, 2022) (citing Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)).

Plaintiff argues that the ALJ does not provide any supporting discussion as to how Plaintiff's treatment was conservative, and that contrary to the ALJ's assertion, Plaintiff's treatment was reasonably aggressive in light of the condition being treated. See Revels v.

8

Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) ("Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated."). Plaintiff proffers that he received specialized treatment from a cardiologist, who sent him for diagnostic testing, and he consulted with a neurologist to identify the underlying cause of his symptoms (AR 463-464, 411, 466, 467, 469, 471, 473, 583, 592); that the consulting neurologist diagnosed Plaintiff with cerebrovascular disease and advised that Plaintiff required aggressive treatment of his diabetes and dyslipidemia (high levels of fats in the blood), including a high dose of statin therapy (AR 592); that Plaintiff's doctors did not advise, nor did the record show, that a more aggressive treatment modality was available to treat Plaintiff's cerebrovascular disease; and that in fact, the May 2020 brain MRI indicated that Plaintiff had chronic white matter disease, as opposed to a single area of acute occlusion, which would rule out the viability of surgical intervention.

Defendant first argues that the case Plaintiff relies on, Revels, is distinguishable, as there, the court criticized the ALJ for describing a claimant's fibromyalgia treatment as conservative, when the claimant had received facet and epidural injections in her neck and back, as well as steroid injections in her hands. Revels, 874 F.3d at 667. Defendant submits that here by contrast, Plaintiff's assertion that his treatment for cerebrovascular disease was actually aggressive in nature rests upon the mere fact that Plaintiff underwent diagnostic testing and consultation with a neurologist (AR 411, 463-464, 466-467, 469, 471, 473, 583, 592); and that Plaintiff fails to explain why the participation of a medical specialist or the fact he underwent diagnostic testing – including an EKG, MRI, and tilt table test – prior to receiving a diagnosis evinces aggressive treatment.

Plaintiff replies that Defendant ignores the underlying reasoning of Revels as the outcome of that case rested on the premise that the evaluation of the aggressiveness of treatment must take into account the condition being treated. Plaintiff argues that here, the record does not show that Plaintiff's combination of high blood pressure and vasovagal syncope could be treated with methods other than close monitoring, restricted activities and medication; and his doctors did not advise, nor did the record show, that a more aggressive treatment modality was available to treat his cerebrovascular disease.

1    While Defendant could be correct that the treatment here or diagnostic tests do not show aggressive treatment, the ALJ did not sufficiently connect, describe, or support the reasoning as required under Ninth Circuit law.  "[S]ince the ALJ neither identifies which treatments he characterizes as 'conservative' nor identifies purportedly 'aggressive' treatments Plaintiff could, but did not, pursue, the Court cannot conclude the ALJ's finding that Plaintiff's treatments were 'conservative' is properly supported by substantial evidence."  Warecki, 2022 WL 2901606, at *9–10; see also Revels, 874 F.3d at 667 ("Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated . . . The ALJ provided no explanation why he deemed this treatment 'conservative' *for* fibromyalgia." (emphasis added)).  In regard to tying the treatment to the condition, Plaintiff is correct that his physician used the term aggressive in relation to treatment, stating "[h]is diabetes and dyslipidemia needs to be treated aggressively; may benefit from high does statin therapy."  (AR 592.)  Defendant did not mention this aspect of this record in the opposition brief at all.

   Thus, the Court concludes it is not a clear and convincing reason given the ALJ's lack of any specific discussion regarding the treatment in relation to any of the Plaintiff's conditions singularly, or in conjunction with one another.  See Revels, 874 F.3d at 667; Warecki, 2022 WL 2901606, at *9–10; Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available [and] [a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."); Chavez v. Colvin, No. ED CV 12-1771-PJW, 2014 WL 1289778, at *5 (C.D. Cal. Mar. 31, 2014) ("[T]he ALJ did not specify what evidence in the record there was to suggest that Plaintiff's fibromyalgia treatment was conservative, as opposed to some other more aggressive treatment used to treat this disease, which she refused."); Garcia v. Comm'r of Soc. Sec., No. 1:21-CV-00068-SAB, 2022 WL 2110709, at *6–9 (E.D. Cal. June 10, 2022) ("[T]he ALJ did not sufficiently support the finding with specific reasons nor tied the finding to specific testimony, nor even mentioned the specific medications . . . even if the medications Plaintiff was prescribed here could be considered routine and conservative for the mental health conditions, the Court finds the ALJ's analysis to be insufficiently specific to qualify as a clear and convincing

supported by substantial evidence in the record.") (collecting cases).

**B.  Controlled with Medication**

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff challenges that the record did not support the ALJ's conclusion that Plaintiff's "conditions were mostly well-controlled with medication." (AR 21.) Plaintiff argues the ALJ appears to rely on a single notation in September 2020 that Plaintiff was "feeling okay" (AR 21), and a mere statement that he was feeling okay during one appointment did not establish that his cerebrovascular symptoms, including dizziness and syncope, changed or significantly improved. Plaintiff emphasizes the Ninth Circuit has found that it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding that a claimant is capable of working; instead, an ALJ must interpret reports of improvement in the context of his impairment and the nature of his symptoms. See Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014). Plaintiff notes that Dr. Johnson reported Plaintiff's impairments were slowly progressive, and symptoms of daily dizziness and syncope at the time of completing a questionnaire in March 2021. (AR 610, 613.) Plaintiff additionally highlights that in May 2020, Plaintiff's cardiologist noted that a tilt table test was positive for syncope and Plaintiff was still experiencing recurrent syncope. (AR 582-583.) Thus, Plaintiff submits that in the context of the record as a whole, a notation that Plaintiff was feeling okay in September 2020 did not indicate that his symptoms significantly improved or resolved.

Defendant first responds that Garrison is distinguishable as there, the court criticized the ALJ for finding the claimant's mental health condition had improved, remarking, "[a]s we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane- in the course of treatment." Garrison, 759 F.3d at 1017. Here, Defendant emphasizes that Plaintiff's criticism pertains to the ALJ's assessment of alleged limitations resulting from physical impairments, rather than a mental condition known to wax and wane. Turning to the ALJ's actual citations to the records here, Defendant directs the

Court to certain aspects of records noted by the ALJ.  First, the ALJ noted that "[t]he claimant went to a walk-in clinic in April 2020 for some lab work, and there was again no mention of syncopal episodes.  (AR 21, 557-560.)  The ALJ noted that in May of 2020, Plaintiff "saw a neurologist due to his (remote) history of stroke, and nothing abnormal was found."  (AR 21, 590.)  The ALJ noted that when Plaintiff presented to his primary care physician in September 2020, Plaintiff reported "feeling okay," and there was no mention of particular symptoms, and that when he presented in March of 2021, there was no mention of particular symptoms.  (AR 21, 619.)  Defendant argues that improvement in symptoms due to the use of medication supports the finding of no disability.  See Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).

First, the Court agrees with Plaintiff that the principle underlying Garrison is not strictly limited to mental disabilities or symptoms, but more generally that an ALJ cannot pick out a few isolated instances of improvement and use them as a basis for concluding that the claimant was capable of working, as indicated by the number of cases cited below.

As for the evidence that Plaintiff had no syncopal episodes in April 2020, and a normal examination with a neurologist in May 2020, the Court also agrees with Plaintiff that merely because Plaintiff did not report a syncopal episode during a doctor's visit did not show that his condition was well-controlled, and merely because a neurological exam was normal in the context of cerebrovascular disease, did not show good control of his symptoms.  At end, the Court cannot conclude based on the Defendant's reliance on the few citations at AR 21, that the ALJ's finding that "the conditions were mostly well-controlled with medication" is sufficiently clear and convincing.  Specifically, it is not clear how these records would demonstrate that, even if the symptoms were not present on these limited dates, that the conditions were in fact well-controlled *because* of medication or treatment.  There is nothing to indicate from the omission of certain complaints from these records, that such omissions are rooted in control of the conditions due to medication.  At bottom, the ALJ does not explain which conditions or symptoms are well controlled by which medications or treatments.  See Lyn C. v. Comm'r, Soc. Sec. Admin., No. 6:18-CV-01817-HZ, 2020 WL 3265396, at *4 (D. Or. June 16, 2020) ("The ALJ failed to explain how Plaintiff's ability to stand easily, but slowly, from a chair supports his

1  conclusion that her pain was adequately controlled with medications [and] [s]imilarly, Plaintiff's
2  report that a medication that she had just started taking was 'starting to work' does not
3  demonstrate that the medication adequately controlled her symptoms."); Garcia v. Astrue, No.
4  12CV992-WQH BLM, 2013 WL 1797029, at *14 (S.D. Cal. Mar. 13, 2013) ("Accordingly,
5  while there is evidence supporting a statement that medication temporarily helped Plaintiff's
6  memory problems, there is not substantial evidence supporting the ALJ's conclusion that
7  Plaintiff's medication *controlled* her symptoms." (emphasis in original)); Samantha B. v.
8  Berryhill, No. 3:17-CV-01753-SB, 2019 WL 760074, at *8 (D. Or. Jan. 22, 2019) ("[S]ubstantial
9  evidence does not support the ALJ's finding that Plaintiff's headaches/transformed migraines
10 were effectively controlled with medication.").

11     This is not a case where records were directly cited by the ALJ in support of this
12 rationale, and such records expressly referenced improvement in symptoms from medication or
13 treatment, or control of symptoms from medication. See Brown v. Comm'r of Soc. Sec., No.
14 1:20-CV-00721-SAB, 2021 WL 4078015, at *17 (E.D. Cal. Sept. 8, 2021) ("Accordingly, while
15 the relief was actually reported **as low** as 50%, Plaintiff did repeatedly report significant relief up
16 to 80% from pain medications between February of 2018 and January of 2019, including
17 multiple instances of 80% [and] [t]he Court finds the ALJ's finding that Plaintiff's pain was
18 reported to be well-managed and improved with medication to be a clear and convincing reason
19 based on substantial evidence in the record to reject the pain testimony . . . [g]iven the length of
20 reporting of improvement with medication cited by the ALJ, this is not a case where the ALJ
21 focused on a few isolated incidents that may be attributed to waxing and waning."); Mellgren v.
22 Colvin, No. 2:14-CV-00387-JTR, 2015 WL 5021725, at *4 (E.D. Wash. Aug. 24, 2015) ("Dr.
23 Holmquist told Plaintiff to stop using all his lung medications for one month to determine
24 whether the medications were helpful . . . [b]y the end of July 2012, Dr. Holmquist opined that
25 Plaintiff 'does not appear to have significant obstructive disease,' but rather, '[m]inor
26 bronchospasm' that was 'reversible with albuterol[,]' . . . [i]n August 2012, Dr. Holmquist
27 declined to fill out disability paperwork for Plaintiff because he did not have significant medical
28 problems and because his condition 'improved on daily QVAR[,]' . . . [i]n a June 2013 office

1 visit with Edward Gruber, ARNP, Plaintiff reported 'some improvement while on [respiratory

2 medication][,]' [and thus] [t]he record fully supports that Plaintiff's pulmonary impairment is

3 stable and well controlled with medication; thus, this is a clear and convincing reason to discount

4 Plaintiff's credibility.").[6]

5       Accordingly, the Court does not find the ALJ's statement that the Plaintiff's condition

6 was well-controlled on medication is a clear and convincing reason supporting the discounting of

7 Plaintiff's testimony. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir.

8 2002) ("The clear and convincing standard is the most demanding required in Social Security

9 cases.").

10     **C.    Activities of Daily Living**

11       The ALJ may consider the claimant's daily activities in making a credibility

12 determination. See Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017); Thomas, 278

13 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater

14 severity of impairment than can be shown by objective medical evidence alone, we will carefully

15 consider any other information you may submit about your symptoms . . . Factors relevant to

16 your symptoms, such as pain, which we will consider include: (i) Your daily activities.").

---

[6] See also Fennell v. Berryhill, 721 F. App'x 652, 655 (9th Cir. 2018) ("Fennell's allegedly disabling vision loss is controlled by medication and eyeglasses . . . she is able to drive nonetheless; she did not follow a prescribed course of treatment and lied to her doctor about this failure."); Laluangphet v. Colvin, No. 2:14-CV-499-EFB, 2015 WL 5679876, at *8 (E.D. Cal. Sept. 24, 2015) (finding "[t]he record contains significant evidence supporting the ALJ's finding that plaintiff was not fully compliant in taking her medication as prescribed, but did well when she was compliant," citing 9 records showing noncompliance, and records specifically where physician notes claimant was doing well under specific medications previously noncompliant with, and concluding "plaintiff's failure to take her medication as prescribed, especially in light of the evidence demonstrating that plaintiff's impairments were effectively controlled by medication, is a clear and convincing reason for rejecting her subject complaints."); Cox v. Comm'r of Soc. Sec., No. 1:20-CV-01520-SAB, 2022 WL 3691309, at *12 (E.D. Cal. Aug. 25, 2022) ("[T]he ALJ accurately noted that 'the records indicated that the claimant and her treatment providers have reported improvement to her symptoms with medication compliance[,]' . . . noted that at the hearing, Plaintiff 'testified that her crying spells and outburst seem to be getting better with medication[,]' [and] the ALJ accurately relied upon records regarding Plaintiff being stable, symptoms being well-controlled on medications, and that Plaintiff was variably compliant with medications at other times."); Proctor v. Comm'r of Soc. Sec. Admin., No. CV-19-05503-PHX-MTL, 2020 WL 6796767, at *7 (D. Ariz. Nov. 19, 2020) ("The ALJ pointed to medical exams that show medications have improved or controlled Plaintiff's functioning and pain. (R. at 23–24 (citing R. at 594, 685, 1543, 1764, 1878).) In one report, Plaintiff stated that "medications provide effective pain control, and improve quality of life by at least 30%." (R. at 634.) In other reports that the ALJ cited, Plaintiff stated that the medication improved her "quality of life by 50%." (R. at 1545, 1551, 1567.) . . . [and] [a]s Defendant points out, a further look at the record reveals many more instances where Plaintiff's impairments were positively impacted or, at the very least, controlled by medication.").

However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." Vertigan, 260 F.3d at 1050 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). In fact, "many home activities are not easily transferable to what may be the more grueling environment of the workplace." Fair, 885 F.2d at 603. Only if a claimant's level of activities is inconsistent with her claimed limitations would activities of daily living have any bearing on the claimant's credibility. Reddick, 157 F.3d 722.

There are two ways an ALJ may use daily activities for an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts the claimant's testimony. Id. Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639.

Plaintiff argues that in relying on daily activities, the ALJ did not elaborate on what these daily activities entailed or how such activities were inconsistent with Plaintiff's testimony. (AR 22). Plaintiff notes that in summarizing Plaintiff's testimony, the ALJ indicated that Plaintiff's wife was disabled, and that Plaintiff was responsible for daily chores and overall household upkeep. (AR 21.) Plaintiff argues this description of Plaintiff's testimony was inaccurate, as Plaintiff testified that his wife did all of the cooking and cleaning, and despite having cerebral palsy, she basically did everything in the household. (AR 37.) Plaintiff argues this testimony was consistent with Plaintiff's function and exertion reports, wherein he reported that his wife did the cooking, cleaning, and grocery shopping. (AR 217-218, 238, 243-244.) Additionally, Plaintiff reported that he felt worthless because he could not help his wife and he spent his days sitting and watching TV. (AR 39, 41.) Plaintiff submits that the foregoing testimony and function reports showed that Plaintiff's activities were very limited and they aligned with his alleged level of physical dysfunction. Plaintiff argues the ALJ failed to identify any *specific*

1  conflicts between Plaintiff's reported activities and his alleged symptoms.  See Burrell v. Colvin,
2  775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general
3  finding—an unspecified conflict between Claimant's testimony about daily activities and her
4  reports to doctors—and comb the administrative record to find specific conflicts.").

5        Defendant first responds that the "ALJ correctly noted that Plaintiff testified at the
6  administrative hearing that his wife was disabled (AR 21, 37)."  (Opp'n 12.)  Defendant next
7  responds that contrary to Plaintiff's claim, the ALJ made specific references to Plaintiff's
8  reported activities (AR 18, 21), specifically noting that Plaintiff reported that he could perform
9  simple maintenance, prepare meals, get along with others, shop, spend time with friends and
10 family, deal appropriately with authority, live with others, and manage funds.  (AR 18, 21, 239-
11 240, 245, 247-248, 250, 255, 269, 274-277, 282.)  Defendant argues the Ninth Circuit has long
12 held that an ALJ can rely on a claimant's daily activities when they contradict his testimony.
13 Molina, 674 F.3d at 1113 ("[E]ven where those activities suggest some difficulty functioning,
14 they may be grounds for discrediting the claimant's testimony to the extent that they contradict
15 claims of a totally debilitating impairment").

16       Plaintiff replies first, that the ALJ did not identify such activities as a basis for
17 discounting Plaintiff's allegations of *physical* dysfunction; and second, neither Defendant nor the
18 ALJ actually explain how such minimal activities showed that Plaintiff could perform medium
19 level work on a full-time and continuing basis or contradicted his allegations of cerebrovascular
20 symptoms.  See Garrison, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude
21 work and all the pressures of a workplace environment will often be consistent with doing more than
22 merely resting in bed all day.").

23       First, as for Defendant's response that the "ALJ correctly noted that Plaintiff testified at
24 the administrative hearing that his wife was disabled (AR 21, 37)," (Opp'n 12), the Court finds
25 Defendant's response concerning Plaintiff's wife's disability does not clearly address the
26 Plaintiff's argument, as the ALJ's opinion stated: "[h]owever, he did say that his wife his [sic]
27 disabled due to various medical conditions, and that *he* is the one responsible for daily chores
28 and overall household upkeep."  (AR 21 (emphasis added).)  Therefore, it is not clear to the

Court whether this was a typographical error or what the meaning behind the ALJ's statement is in relation to the findings pertaining to daily activities, as Defendant never addressed the second clause of this sentence. (See AR 21, Opp'n 12.)

Further, while the ALJ discussed some activities of daily living in the earlier portion of the opinion, Plaintiff is correct that these specific findings were in relation to the evaluation of the severity of mental impairments under the "paragraph B" criteria. The Court agrees with Plaintiff that there was insufficient explanation or connection between the previous notations of daily activities entirely confined to the ALJ's severity analysis and discussion of the paragraph B criteria at step two, and the ALJ's reliance on such activities to discount Plaintiff's testimony concerning physical limitations. See Garcia, 2022 WL 2110709, at *9–10 ("[A]t step three, the ALJ largely cites to the ability to essentially complete activities such as communicating and presenting at medical appointments as part of the listing analysis of the paragraph B criteria, and the only mention of a specific activity that can be considered a 'daily activity' outside the realm of a basic ability to groom or complete self-care is that she can perform simple maintenance, and spends time with family and friends . . . [w]hile Defendant emphasizes the discussion was incorporated into the rest of the opinion, the ALJ's citations at step three are essentially findings relating to the listing determination concerning rudimentary abilities to even obtain medical care and present oneself at a doctor to receive help – these are not specific activities of daily living as typically used in a credibility analysis that reviews 'activities of daily living' in relation to specific testimony."); Hyneman v. Colvin, No. C13-0669-JLR, 2013 WL 5913235, at *3 (W.D. Wash. Nov. 4, 2013) ("[T]he portion of the decision cited as support does not actually contain a description of Plaintiff's activities nor an explanation of how those activities contradict his allegations ... [t]he ALJ did describe the 'mild restriction' in Plaintiff's daily activities in his step-three findings, but did not suggest there that Plaintiff's self-reported daily activities undermined his credibility ... passing reference to daily activities that are 'contrary to a finding of total disability' ... without any indication of which activities he had in mind nor which allegations are undermined by those activities, is not sufficiently specific as to be considered clear and convincing."); Gardner v. Colvin, No. EDCV 13-1272 JC, 2014 WL 255621, at *4 (C.D. Cal. Jan. 23, 2014) (stating the court was "not

persuaded that the foregoing finding by the ALJ satisfied the ALJ's obligation to specify the basis for rejecting plaintiff's credibility in this case [as] [t]he ALJ identified the foregoing mild limitation in plaintiff's mental abilities when considering the 'paragraph B Criteria' used to determine the severity of plaintiff's mental impairments at step two ... not when evaluating plaintiff's credibility in connection with the ALJ's residual functional capacity assessment at step four.").

Accordingly, the Court finds the ALJ's citation to activities of daily living was not a clear and convincing reason for discounting Plaintiff's testimony. Garcia, 2022 WL 2110709, at *10 ("[T]he Court does not find the ALJ's blanket reference to activities of daily living at step four, and limited discussion at step three, to be sufficiently connected to specific aspects of the Plaintiff's symptom testimony, to satisfy the clear and convincing standard [as] [t]he ALJ never actually linked the medical evidence by identifying which daily activities conflicted with which part of the testimony."); Burrell, 775 F.3d at 1138 (9th Cir. 2014) ("[T]he ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original); Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020) ("This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony.") (internal quotation marks and citation omitted); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) ("[T]he ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying *which* testimony [the ALJ] found not credible and explaining *which* evidence contradicted that testimony ... This boilerplate language does neither.") (internal quotation marks and citations omitted) (emphasis and alterations in original); Orn, 495 F.3d at 639 ("Neither of the two grounds for using daily activities to form the basis of an adverse credibility determination are present ... activities do not contradict his other testimony ... [and] activities do not meet the threshold for transferable work skills.").

**B.     The Court finds Remand is Appropriate**

In light of the above error, the Court does not find it necessary to address the Plaintiff's remaining five challenges to the ALJ's decision.

The Court finds remand is the appropriate remedy. The ordinary remand rule provides

that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases. Treichler, 775 F.3d at 1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Garrison, 759 F.3d at 1021.

The Court finds that based on the ALJ's opinion and review of the record, significant doubts remain as to whether Plaintiff is in fact disabled.  The Court orders this action remanded for further administrative proceedings consistent with this opinion, and to further develop the

record as deemed necessary.

## V.

## CONCLUSION AND ORDER

For the reasons explained above, the Court finds the ALJ erred by not providing clear and convincing reasons for discounting Plaintiff's testimony, and that remand is appropriate for further consideration of this case by the agency. See Moore, 278 F.3d at 924 ("The clear and convincing standard is the most demanding required in Social Security cases."). The Court finds it unnecessary to discuss Plaintiff's other five challenges in light of the fact the ALJ will review the entire record and issue a new opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion for summary judgment is DENIED, Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED, and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Barry Lynn Eidson, and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 24, 2023**

UNITED STATES MAGISTRATE JUDGE